By the Court.
Woodruff, J.
—It was not denied nor doubted, on the argument, nor, so far as appears on the trial, that the agreement with the indorsement thereon signed by the defendants, constituted a valid, binding contract of guarantee by *186 the defendants, that the Messrs. Squires should perform the agreement on their part, according to its legal import.
The breach of that agreement by the Messrs. Squires, and notice of such breach to the defendants being proved, the only question raised was, what damages the plaintiff is entitled to recover.
Whatever damages the plaintiff would have been entitled to recover against the Messrs. Squires for the breach of their agreement, the plaintiff was entitled to recover from the sureties who guaranteed its performance. The obligation of the principal and that of the sureties were plainly co-extensive and concurrent, and their liability respectively the same. The defendants’ guarantee, when accepted, was absolute and unconditional.
The agreement of the Messrs. Squires was, we think, when properly construed, an undertaking to pay to the plaintiff two thousand dollars, in paper of a particular description, at certain specified times, and to be measured for the purpose of ascertaining the quantity at three and one-half cents a pound.
Payment of a money demand was the primary object of the agreement; it provides that the first one thousand dollars “ shall be paid ” in October, the other in November, and the amount shall be applied upon money demands to become due, and payment of which are to be forborne to corresponding dates.
We cannot discriminate between this agreement and a more simple promise, sometimes called a promissory note, by which the maker promises to pay a sum named, in chattels, on a day named and at a specified rate. And to such an agreement, the rule of damages upon breach of an agreement between vendor and vendee, where the price has not been paid, has no application. Heiein we think consists the error in the defendants’ claim on the trial. The case was likened to such an agreement, and inasmuch as the vendee in such case recovers only the difference between the contract price and the market value, it was held that there being here no difference the damages are nominal only\
This is not the proper view of the rights of the parties. For a sufficient consideration the Squires had agreed to pay in paper the sum of two thousand dollars; that sum had already been advanced to them and was in their hands; it matters not that the plaintiff held other security for the same indebtedness; to *187 hold, that this would affect the plaintiff’s title to recover upon this agreement according to its terms, is practically, to say that the agreement itself is without consideration, for plainly, if it be of binding force at all, it is a security that the plaintiff shall have the two thousand dollars and have it in paper.
The construction given to it on the trial was, that the defendants guaranteed, not that the two thousand dollars should be paid, and paid in paper, but that the plaintiff should have whatever profits he would be entitled to, if paper should rise in the market to a higher price than three and one-half cents.
This is indeed the practical result of an agreement between vendor and vendee, where the price is not paid, not because that is the construction of the agreement, but because that gives to the vendee all the beneficial results contemplated by it, in the form of full compensation for the breach. Not so where the agreement to deliver is upon a past consideration. Such an agreement, made on such mutuality as renders it binding, gives title to the whole value of the subject to be delivered.
Again, the holder of an. existing debt, however secured, may require and receive security therefor, with such guarantee for the payment as he may be able to obtain, and if he obtain such guarantee upon a valid consideration, he may enforce against the surety the payment of the whole debt. The theory upon which this case was disposed of, would enable the surety in such latter case to say, “if the debt guaranteed by me had been paid according to the terms of the new security, you must have applied the amount upon the previous indebtedness; it not being paid your claim upon such previous indebtedness remains in full force; you have therefore lost nothing by the failure of my principal to pay the new note or obligation, which was guaranteed by me, and your damages are therefore nominal."
It is true in the present case, that the plaintiff holds in full force against the Squires the original debt, and the mortgage security he held therefor. But he stipulated for and obtained additional security. In order to obtain that additional security, he agreed to forbear, and did forbear; he also consented to receive payment in paper instead of money. The security he so obtained, was a guarantee of the payment of the debt, and that guarantee he is entitled to enforce.
*188 We recur therefore to the observation that the true construction of the agreement is, that it is an undertaking to pay a specific sum of money in chattels, at a rate agreed upon, and on a future day named. And the fact that when the payment is made, it will discharge a money demand already existing, although it made a new and sufficient consideration necessary to support the agreement, does not alter its construction or legal effect, when its binding character is established or conceded.
The rule of damages in such a case, is not, as we believe, open to discussion in this Court. There has been formerly some conflict of views upon the question, whether the rule of damages is the value of the specific articles agreed to be delivered, or the sum which was agreed to be paid in such articles. But in no case that has fallen under our observation, has it been claimed that the plaintiff’s damages were not measured by one or the other of these standards.
In Gleason v. Pinney (5 Cow., 411), where it appeared that the value of the articles in which payment was to be made, was less than the sum to be paid, it was held (in opposition to the opinion of the Chief Justice reported at page 152,) that the plaintiff was entitled to recover the value of such articles.
And in Clark v. Pinney (7 Cow., 681), where the articles in which payment was to be made, had risen in the market, it was held that such a contract was to be treated like a contract of purchase by a vendor who paid the purchase money in advance, and that the plaintiff was entitled to recover the highest price which the articles bore in the market, between the time when they should have been delivered and the day of the trial.
But the first named case came under review in the Court of Errors (see 5 Wend., 393), and on an unanimous reversal by that Court of the judgment below, it was held that although the value of the articles was less than the sum to be paid, the plaintiff was entitled to recover the latter; and the opinions there apply the same rule as the measure of damages, whether the articles are worth more or less. They treat the agreement as made in favor of the debtor, and as giving him the option to pay according to the very terms of the agreement in chattels if he so elect, but if he neglect to avail himself of the privilege, *189 leaving him liable for the sum mentioned to be paid, and for that only. (See 2 J. R., 235; 3 Comst., 88.)
It makes no difference upon the facts stated in this case, whether the defendants are held liable for the sum agreed to be paid, or for the price of the paper; the amount is precisely the same.
The case last mentioned is conclusive, we think, that upon the facts proved, the plaintiff was entitled to recover two thousand dollars with interest from the times when by the terms of the agreement it should have been paid.
It was argued by the defendants’ counsel, that at most the plaintiff could only recover five hundred dollars, upon the ground that inasmuch as his original mortgage debt had been reduced to that sum, he had no personal interest in the contract save to that extent, and therefore could have sustained no greater damages.
The plaintiff was made, by the original arrangement between himself and Squires and the vendors of the mortgaged property, a trustee to collect the purchase money, and apply it to the payment of several parties. The notes were given to him, and the property was mortgaged to him. The agreement under consideration was made with him, and the guarantee was to him. He was therefore a trustee of an express trust, although the instrument sued on was made with him for the benefit of others as well as himself. It was his right and his duty to enforce the agreement, for the benefit of all who were interested. He was, we think, clearly entitled to maintain the action in his own name, and no objection was suggested by the answer, either that the suit was not brought by the real party in interest, or that other parties should have been joined with him. If such an objection could have been properly taken, it was waived.
There must be a new trial, costs to abide the event.
Ordered accordingly.